UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**STEVEN JOSEPH RODNEY**                    **CIVIL ACTION NO. 23-0555**

**VS.**                                      **SECTION P**

                                             **JUDGE TERRY A. DOUGHTY**

**J. HEDGEMON, ET AL.**                     **MAG. JUDGE KAYLA D. MCCLUSKY**

## REPORT AND RECOMMENDATION

Plaintiff Steven Joseph Rodney, a prisoner at Riverbend Detention Center ("RDC") proceeding pro se and in forma pauperis, filed this proceeding on approximately April 27, 2023, under 42 U.S.C. § 1983. He names the following defendants in their individual and official capacities: Warden J. Hedgemon, Assistant Warden Russell, and Captain Barnes.[1]

For reasons below, the Court should dismiss (1) Plaintiff's claims against Captain Barnes and (2) Plaintiff's access-to-court claim. The Court should retain Plaintiff's remaining claims against Warden J. Hedgemon and Assistant Warden Russell.

## Background

Plaintiff claims that for "the past thirteen months that [he has] been an inmate at [RDC], there has been (and still is) a ban on all books, magazines, newspapers, etc." [doc. # 1, p. 3]. "The ban applies to all inmates at all times . . . ." [doc. # 8, p. 2]. The "ban has actually been in place for several years." [doc. # 1, p. 3]. He also lacks "[t]ablets, computers videos, etc. . . ." [doc. # 8, p. 2]. "Aside from the pamphlet called a Rule Book . . . no books are provided by this

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

detention center." *Id.* Plaintiff suggests that the ban impacts his ability to educate, improve, and rehabilitate himself. [doc. # 1, p. 3]. His family and friends tried to send him self-help books, but they received "a note stating that 'no reading materials are allowed to inmates at this facility.'" *Id.*

When Plaintiff told Assistant Warden Russell and Captain Barnes that he thought the "restriction" was unconstitutional and asked them the reason for the restriction, Russell responded that "he is in charge, not the constitution, and that he makes the rules pertaining to this particular institution." *Id.* Russell "unequivocally refuses entry of all books, newspapers, magazines, etc." [doc. # 8, p. 1]. Captain Barnes responded that inmates were to blame for the ban, and he "added that there would not be a book allowed as long as he had his way." [doc. # 1, pp. 3-4].

In his "lone exchange with Warden Hedgemon," Plaintiff asked if he could access "whatever reading materials he or the compound could provide[,]" but Hedgemon reminded Plaintiff of the policy and the reasons for "his" policy. [doc. # 8, p. 1].

RDC does have a kiosk with a law library, but the "application is very limited and very difficult to navigate without some sort of training . . . ." [doc. # 8, p. 1]. Plaintiff also states that there is a "brick and mortar library[,]" but it is "shrouded in confusion on the point of admittance." *Id.* "The supposed schedule is prone to the officers' whims. Visits to this place are invariably cancelled and never re-established." *Id.*

The goal of the ban "is said to be because of prisoners' desire and attempt to smuggle contraband by way of such materials, and the officers' inability or lackluster effort to detect the drugs prior to their circulation. [sic]." [doc. #s 1, pp. 3-4; 8, p. 2]. Plaintiff concedes that the "goal is supported and understood[,]" but he posits that "an improvement of methods that make

the contraband more identifiable may be the more appropriate response." [doc. # 1, pp. 3-4]. In addition, he asks "whether some larger stratagem is in play in order to limit the inmate's progress, leaving him ill-equipped upon release, resulting in highly favorable odds for a quick return." *Id.* at 4.

Plaintiff asks the Court to (i) enjoin defendants to allow inmates to receive reading materials and (ii) award him $30,000.00 in punitive damages to penalize defendants from barring him "from education for over a year[.]" [doc. # 1, p. 6].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A.*

*(Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Reading Material**

The Court should retain Plaintiff's claims that Warden Hedgemon and Assistant Warden Russell made a policy banning all reading material at RDC.

Plaintiff claims that Assistant Warden Russell made the policy/ban. When he told Assistant Warden Russell that he thought the "restriction" was unconstitutional and requested the reason for the restriction, Russell responded that "he is in charge, not the constitution, and that he makes the rules pertaining to this particular institution." Russell "unequivocally refuses entry of all books, newspapers, magazines, etc." Plaintiff also claims that Warden Hedgemon made the policy/ban. Plaintiff writes that Hedgemon "reminded me of the policy installed and the reasons for <u>his</u> policy . . . ."

The Court cannot analyze Plaintiff's claim without first evaluating defendants' proffered reason(s), if any, for making the alleged policy. In *Beard v. Banks*, 548 U.S. 521, 527 (2006),

the plaintiff challenged "a policy forbidding inmates all access to newspapers, magazines, and photographs . . . ." The Supreme Court examined whether the policy or regulation was reasonably related to a legitimate penological interest. *Id.* (*citing Turner v. Safley*, 482 U.S. 78 (1987)). Similarly, in *Mills v. LeBlanc*, 2022 WL 3287961, at *1 (5th Cir. Aug. 11, 2022), a plaintiff claimed that defendants confiscated "certain items shipped to him through the mail, including photographs, picture catalogues, a novel, and magazines." The Court explained that inmates "have a First Amendment right to be free from mail censorship not reasonably related to legitimate penological interests." *Id.*[3]

Further, the Court cannot analyze the claim without examining whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Plaintiff tacitly concedes that the policy/ban at RDC is to control contraband. [doc. # 1, p. 3]. He also maintains that "the attempted goal is supported and understood . . . ."[4] *Id.* However, he suggests that the connection between the policy and ostensible penological objective is too tenuous.[5] He maintains that there may be a "more appropriate response[,]" and he suggests that the policy, which causes

---

[3] S*ee also Pembroke v. Wood Cnty., Tex.*, 981 F.2d 225, 229 (5th Cir. 1993) ("[The arbitrary restriction of reading materials to one bible without showing a need for such a restriction based on prison security is an unacceptable infringement on the prisoners' First Amendment rights.") (abrogated on other grounds); *Green v. Ferrell*, 801 F.2d 765, 772 (5th Cir. 1986); *Mann v. Smith,* 796 F.2d 79 (5th Cir.1986); *Bell v. Wolfish*, 441 U.S. 520, 551 (1979).

[4] "Security, order, and inmate rehabilitation are, of course, legitimate penological interests." *Mills,* 2022 WL 3287961 at *1.

[5] In *Prison Legal News v. Livingston*, 683 F.3d 201, 215 (5th Cir. 2012), the court observed that the defendant "must do more, however, than merely show a formalistic logical connection between [its censorship decisions] and a penological objective, it must show[ ] a *reasonable* relation, in light of the importance of the rights [here] at issue." (internal citations and quotation marks omitted).

"irreparable harm," is an exaggerated response.[6]  [doc. #s 1, p. 3; 8, p. 1].

"A second factor relevant in determining the reasonableness of a prison restriction . . . is whether there are alternative means of exercising the right that remain open to prison inmates. Where 'other avenues' remain available for the exercise of the asserted right, . . . courts should be particularly conscious of the 'measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation.'"  *Turner*, 482 U.S. at 90 (citations omitted).  Here, Plaintiff states that he lacks alternative means by which to exercise his right.  He lacks "[t]ablets, computers videos, etc." "Aside from the pamphlet called a Rule Book . . . no books are provided by this detention center."  His family and friends tried to send him self-help books, but they received "a note stating that 'no reading materials are allowed to inmates at this facility.'"

"A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally.  In the necessarily closed environment of the correctional institution, few changes will have no ramifications on the liberty of others or on the use of the prison's limited resources for preserving institutional order.  When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Turner*, 482 U.S. at 90.  Here, at this early stage of the proceeding, the Court is unable to conclusively examine this factor.  Moreover, "This factor sheds minimal additional light on the general reasonableness analysis." *Prison Legal News*, 683 F.3d at 219.

---

[6] "Absent evidence the prison official's acts are an exaggerated response in the light of valid policy considerations, [a] court[ ] should ordinarily defer to [the] expert judgment of the official." *Mills*, 2022 WL 3287961, at *1 (citations and quotation marks omitted).

"Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Turner*, 482 U.S. at 90.[7] Here, Plaintiff maintains that "an improvement of methods that make the contraband more identifiable may be the more appropriate response[,]" that officials at RDC could provide approved reading material, and that officials could improve their efforts to "detect the drugs prior to their circulation."

Again, the Court should retain this First Amendment claim against Defendants Hedgemon and Russell.

### 3. Captain Barnes

Plaintiff claims that when he told Captain Barnes that he thought the "restriction" was unconstitutional and requested the reason for the restriction, Barnes responded that inmates were to blame for the ban and that "there would not be a book allowed as long as he had his way." [doc. # 1, pp. 3-4].

"A plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Texas Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008).

In *Spence v. Nelson*, 603 F. App'x 250, 255 (5th Cir. 2015), the court concluded "that none of the defendants sued in his or her individual capacity in this case can be liable for the institution of the mailroom policy at issue because none was a policymaker." *Spence v. Nelson*, 603 F. App'x 250, 255 (5th Cir. 2015). The defendants in *Spence* "neither created the challenged

---

[7] "[T]he Supreme Court, unsurprisingly, acknowledged the particular importance of the first factor, explaining that in some cases the second, third, and fourth factors can 'add little, one way or another, to the first factor's basic logical rationale.' *Beard v. Banks,* 548 U.S. 521, 532, 126 S. Ct. 2572, 165 L.Ed.2d 697 (2006). In the light of the first factor, 'the real task' is to determine whether there is a '*reasonable* relation'—that is, 'more than simply a logical relation'—between the prison regulation and the legitimate penological interest." *Id.* at 533, 126 S.Ct. 2572. *Morgan v. Quarterman*, 570 F.3d 663, 666 (5th Cir. 2009) (internal quotation marks edited).

policy nor had any authority to formulate or alter mailroom policies." *Id.* at 256. The plaintiff's "conclusory allegations that the defendants were 'policy supporters' and that they had a duty to investigate his complaints and correct a policy that violated the First Amendment [were] insufficient to raise a genuine dispute of material fact as to whether the defendants violated his constitutional rights." *Id.*

Here, Plaintiff does not plausibly allege that Barnes made the policy/ban. Nor does Plaintiff plausibly allege that Barnes was personally involved in making the policy/ban, that Barnes had the authority to alter the policy, or that Barnes's actions were otherwise causally connected to Plaintiff's alleged deprivation of his constitutional right. Rather, Plaintiff claims that Warden Hedgemon and Assistant Warden Russell made the policy. Thus, the Court should dismiss this claim against Barnes in his individual capacity. *Id.* at 255-56.

The Court should also dismiss this claim against Barnes in his official capacity. If a defendant is not a policymaker, the defendant is "not the proper defendant for an official capacity claim . . . ." *Truvia v. Julien*, 187 F. App'x 346, 350 (5th Cir. 2006) ("An assistant district attorney, therefore, is not a policymaker and not the proper defendant for an official capacity claim against the District Attorney's Office."); *see Kelley v. City of Wake Vill., Texas*, 264 F. App'x 437, 442 (5th Cir. 2008) ("Because no evidence has been presented that Officer Crawford was, at any time relevant to this proceeding, a policymaker in the WVPD, we affirm the district court's dismissal of the claim against him in his official capacity.").

To be sure, "the specific identity of the policymaker is a legal question that need not be pled . . . ." *Groden v. City of Dallas, Texas*, 826 F.3d 280, 284 (5th Cir. 2016). Here, however, the undersigned does not recommend dismissing Plaintiff's official capacity claim because

9

Plaintiff fails to plead the identity of a policymaker; rather, the undersigned recommends dismissal because Plaintiff does not allege that Barnes made policy.

Finally, Plaintiff claims that Barnes threatened to place him in solitary confinement if he persisted with his "entreaties." [doc. # 8, p. 2]. Plaintiff, however, does not state a claim of constitutional dimension.

Verbal threats, without more, do not support a claimed constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983). Allegations of mere verbal abuse by prison guards simply do not give rise to a cause of action under Section 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993); *Siglar*, 112 F.3d at 191. "[M]ere allegations of verbal abuse or epithets, reprehensible though they may be, do not amount to a cognizable constitutional violation under Section 1983." *Matthews v. LeBlanc*, 2022 WL 2951759, at *1 (5th Cir. July 26, 2022).

Accordingly, the Court should dismiss Plaintiff's claims against Captain Barnes.

**4. Access to Court**

RDC has a kiosk with a law library, but Plaintiff alleges that the "application is very limited and very difficult to navigate without some sort of training . . . ." [doc. # 8, p. 1]. He also states that there is a "brick and mortar library[,]" but it is "shrouded in confusion on the point of admittance." *Id.* "The supposed schedule is prone to the officers' whims. Visits to this place are invariably cancelled and never re-established." *Id.*

Plaintiff does not explicitly allege that he lacks access to the courts because he lacks access to a law library. To the extent he does raise this claim, he does not state a plausible claim on which relief may be granted.

To succeed on claim that a defendant is violating a plaintiff's right to access the courts, the plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *Lewis v. Casey*, 518 U.S. 343, 356 (1996). The "injury requirement is not satisfied by just any type of frustrated legal claim." *Id.* at 353. Rather, a plaintiff must demonstrate that the lack of access prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under 42 U.S.C. § 1983. *Id.* at 353-54 (*quoting Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).

Here, Plaintiff does not identify a claim, defense, or proceeding that he cannot presently prepare or file, that he could not prepare or file in the past, that he lost, or for which he could not obtain a remedy. Accordingly, the Court should dismiss this ostensible claim.

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Steven Joseph Rodney's claims against Captain Barnes and his access-to-court claim be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R.**

**Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 18th day of August, 2023.

_____
Kayla Dye McClusky
United States Magistrate Judge